**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PULL'R HOLDING COMPANY, LLC, a Delaware limited liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| CUSTOM LEATHERCRAFT MFG. CO., INC., a California corporation, | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT FALSE MARKING**

Pull'r Holding Company, LLC by its attorneys, for its Complaint against Custom Leathercraft Mfg. Co., Inc. alleges as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. This is an action for false marking arising under 35 U.S.C. § 292 of the Patent Laws of the United States.

2. Pull'r Holding Company, LLC ("PHC") is a corporation registered to do business in Illinois and has its principal place of business in Elk Grove Village, Illinois.

3. Custom Leathercraft Mfg. Co., Inc. ("CLC") is a California corporation and has its principal place of business at 10240 South Alameda St., South Gate, CA 90280.

4. PHC and CLC manufacture and sell work gear such as knee pads, tool pouches, tool rigs and tool belts.

5. CLC regularly transacts in this District by selling its work gear to retail stores within this District such as Home Depot, Ace Hardware and True Value.

6.　　This Court has general personal jurisdiction over CLC by virtue of CLC's systematic and continuous contacts within this District. This Court also has specific personal jurisdiction since acts conducted by CLC in this District are the same CLC acts which constitute the instant cause of action. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332, and 1338(a) and 28 U.S.C. §2201 *et seq.*

7.　　Venue is proper in this forum pursuant to 28 U.S.C. §§1391(b) and (c), and 1400(b).

### COUNT I – CLC'S FALSE MARKING OF ITS PATENT NO. D438,701

8.　　CLC has a large portfolio of patents and has enforced them against its competitors.

9.　　In 2010 CLC filed a lawsuit against PHC in the Central District of California, entitled *Custom Leathercraft Manufacturing Co., Inc., v. Pull'r Holding Company, LLC,* 2:10 CV 10-2399, alleging, *inter alia,* infringement of several of its patents on knee pads and tool pouches. This case is currently pending and is in the discovery phase.

10.　　In 2004, CLC also filed a lawsuit against Rooster Products International, Inc. ("Rooster") in the Central District of California, entitled *Custom Leathercraft Manufacturing Co., Inc., v. Rooster Products International, Inc.,* Case No. CV-04-4666 (MANx), ("the *CLC v. Rooster* case").

11.　　CLC, Rooster and PHC have always been direct competitors that sold work gear product, including tool pouches and knee pads, to retail outlets, such as Home Depot, Sears, Menards, Ace Hardware, and True Value.

12.　　In the *CLC v. Rooster* case, CLC asserted four patents against Rooster, alleging infringement of various tool bags and knee pads.

13. One of CLC's patents is U. S. Patent D438,701 ("the '701 patent") covering a tool pouch. This patent is not involved in the current California litigation between CLC and PHC.

14. The '701 patent is one of the patents that CLC alleged against Rooster.

15. On April 28, 2005, the District Court in *Rooster*, in a written opinion, granted summary judgment in favor of Rooster and held that the '701 patent was invalid for not being novel. (Ex. A, pp. 29, 30, 33)

16. The remainder of the case proceeded to trial in which Rooster prevailed.

17. CLC did not appeal any portion of the *CLC v. Rooster* case, including the April 28, 2005 Judgment that the '701 patent was invalid.

18. Thus, since April 28, 2005, CLC has known that the '701 patent was invalid.

19. Subsequent April 28, 2005 and to the present, even though the California District Court held that the '701 patent was invalid, CLC has wrongfully placed the '701 patent number on a large number of its products, including, but not limited to the following products:

    #1620 CLC Nail & Tool Bag

    #6714 CLC 5 Piece Framer's Comfort Lift System

    #1604 CLC 4 Piece Combo Apron

    #527X CLC Carpenter Work Apron

    #1823 CLC Nail & Tool Bag

    #1429 CLC Carpenter Work Apron

    #1370 CLC Work Apron

    #533X CLC Carpenter's Nail & Tool Bag

    #21452 CLC

    #5833 CLC

    #51449 CLC

    #5605 CLC

#533X CLC Carpenter's Nail & Tool Bag

#332720 Husky manufactured by CLC 12 Pocket Suede Leather Work Apron

#409210 Husky manufactured by CLC 12 Pocket Top Grain Leather Work Apron

#409242 Husky manufactured by CLC 10 Pocket Top Grain Leather Carpenters Nail & Tool Bag

#413362 Husky manufactured by CLC 10 Pocket Suede Leather Nail and Tool Bag with Belt

#DG5472 Dewalt manufactured by CLC 12 Pocket Carpenter's Top Grain Leather Apron

#DG5372 Dewalt manufactured by CLC 12 Pocket Carpenter's Suede Apron

#DG65476

20. CLC has sold, and continues to sell, these items to its retail customers, including, but not limited to, Ace Hardware, Amazon.com, Orgill, Fastenal, Do-It Best, and Berland House of Tools.

21. CLC's marking of its tool pouches with the '701 patent number provided express notice and warning that any manufacturer that made and sold tool pouches such as those shown in the '701 patent would be infringing the '701 patent.

22. When a retail store or the purchasing public (jointly referred to as "consumer") purchases CLC tool pouches that have been marked with the '701 patent since April 28, 1995, the only notice the consumer has received is that these CLC tool pouches are covered by CLC's '701 patent, that the '701 patent is valid, and if the consumer purchased a similar pouch, it would be infringing CLC's '701 patent.

23. Thus, CLC's marking of its tool pouches with the '701 patent number provided express notice and warning that any competitor or consumer would be infringing the '701 patent if it manufactured a tool pouch or purchased a similar tool pouch from any other supplier, including PHC.

24. CLC provided this express notice and warning of its '701 patent to each of its competitors and actual and potential customers after April 28, 2005 even though it knew the California District Court held that the '701 patent was invalid.

25. Despite having knowledge that its '701 patent was invalid, since April 28, 2005 CLC has continued to place the '701 patent number on its products for the sole purpose of deceiving the public into believing that those products are covered by the '701 patent, thereby providing notice to its competitors and the consumers of its '701 patent, and warning them not to infringe the '701 patent by making, using or selling a similar tool pouch as that shown in the '701 patent.

26. The public, including CLC's competitors and all potential consumers, upon seeing the '701 patent number on CLC's product, would have never known that the '701 patent was invalid.

27. A patentee violates 35 U.S.C. §292 when it knowingly marks a product with a patent number which patent is either invalid, expired or which does not cover that product.

28. CLC is a large international company that regularly enforces its patents.

29. CLC has had knowledge of 35 U.S.C. §292 since at least 2005.

30. In the *CLC v. Rooster* case, the issue of 35 U.S.C. §292 was a central issue and was thoroughly argued in motions and at trial.

31. In the *CLC v. Rooster* case, Rooster alleged that CLC violated 35 U.S.C. §292 by improperly placing other patent numbers on some of its knee pads and tool pouches.

32. Since April 28, 2005, CLC has deceived the public by misrepresenting that its products were covered by the '701 patent.

33. CLC had knowledge that this misrepresentation was false, because as of April 28, 2005 when the District Court held that the '701 patent was invalid.

34. CLC's misrepresentation that its products were covered by the '701 patent coupled together with its knowledge that the '701 patent was invalid and CLC's knowledge of U.S.C. §292 and history of enforcing its patent portfolio, establishes a fraudulent intent to deceive the public.

### COUNT II– CLC's FALSE MARKING OF PATENT NO. 5,537,689

35. PHC incorporates the allegations contained in paragraphs 1 through 35 of this Complaint as if fully set forth herein.

36. CLC is the owner of U. S. Patent 5,537,689 covering a knee pad ("the '689 patent").

37. CLC previously asserted the '689 patent against Rooster in the *CLC v. Rooster* case.

38. In the April 28, 2005 Opinion, the District Court held that Rooster knee pads ("Gel Knee Pad 6"), did not infringe the '689 patent because Gel Pad 6 was not "egged-shaped" as required by the '689 patent claims. (Ex. A, pp. 12, 15, 16, 23)

39. The California District Court held that Rooster's Gel Pad 6 knee pad was "more akin to a rectangle with rounded corners, or box-like oval, rather than egg shaped." (Ex. A, p. 23)

40. CLC did not appeal this Judgment.

41. Thus, since April 28, 2005, CLC had knowledge that the shape of the Rooster Gel Knee Pad 6 is not covered by the '689 patent.

42. Subsequent April 28, 2005, CLC has sold knee pads having the same shape as the Rooster Gel Knee Pad 6, which is not covered by the '689 patent, including but not limited to item numbers G345, G351, and G347.

43. CLC has sold and continues to sell these items to its retail customers.

44. CLC placed the '689 patent number on its product as a warning to all of its competitors and to the purchasing public that the knee pads made by PHC, Rooster or any other company having the same shape as Rooster's Gel Pad 6 would be an infringement of the '689 patent, despite the California District Court expressly holding that such a shape is not an infringement of the '689 patent.

45. CLC has placed the '689 patent number on its product for the sole purpose of deceiving the public in violation of 35 U.S.C. § 292.

46. Since April 28, 2005, CLC has misrepresented to its competitors and to the public that its G345, G351 and G347 knee pads were covered by the '689 patent.

47. CLC had knowledge that this misrepresentation was false, as on April 28, 2005, the California District Court held that the shape of CLC's knee pads G345, G351 and G347 were not egg-shaped" as required by the '689 patent.

48. CLC's misrepresentation that its products were not covered by the '689 patent coupled together with its knowledge that the '689 patent did not cover the shape of its knee pads, CLC's knowledge of U.S.C. §292, and history of enforcing its patent portfolio, establishes a fraudulent intent to deceive the public.

## JURY DEMAND

49. PHC respectfully requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, PHC prays for judgment or relief against CLC as follows:

1. for judgment that CLC wrongly marked its products with U.S. Patent No. D438,701 between April 28, 2005 and the present;

2. that Pull'r be awarded up to $500 for each piece of merchandise CLC has placed the '701 patent number on since April 28, 2005;

3. for judgment that CLC wrongly placed U.S. Patent No. 5,537,689 on its products between April 28, 2005 and the present;

4. that Pull'r be awarded up to $500 for each piece of merchandise CLC has improperly placed the '689 patent number on since April 28, 2005;

5. for PHC to be awarded its attorneys' fees, costs and disbursements incurred in enforcing this matter pursuant to 35 U.S.C. §§285 and 292; and

6. any other relief this Court may deem equitable and just.

Respectfully Submitted,

PULL'R HOLDING COMPANY LLC

By: *[signature]*
Lee F. Grossman
Mark M. Grossman
Grossman Law Offices
225 W. Washington Street, Suite 2200
Chicago, Illinois 60606
(312) 621-9000